UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHARLOTTE CARMAN AND | ) | |
| KRISTOPHER CARMAN, BOTH | ) | |
| INDIVIDUALLY AND AS NEXT | ) | |
| FRIENDS OF C.C. | ) | |
| THEIR MINOR CHILD | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) Civil Action No. C-06-CV-548 | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |

STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF
FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677

It is hereby stipulated by and between each of the undersigned plaintiffs, Charlotte Carman and Kristopher Carman, Individually and as Guardians of Connor Carman, aka Connor Renee Carman, and the defendant, United States of America, by and through their respective attorneys, as follows:

1. The parties to this Stipulation do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Stipulation.

2. This Stipulation is not, is in no way intended to be, and should not be construed as an admission of liability or fault on the part of the United States, its agents, servants, or employees, and it is specifically denied that they are liable to the plaintiffs. This settlement is entered into by all parties for the purpose of compromising disputed personal injury claims under the Federal Tort

Claims Act and avoiding the expenses and risks of further litigation.

 3. The United States agrees to pay the cash sums set forth below in Paragraph 3.a., to purchase the annuity contract described below in Paragraph 3.b., and to establish the Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust for the Benefit of Connor Renee Carman, (hereinafter "Reversionary Trust") described below in Paragraph 3.c.

 a. Within three business days after counsel of record for the United States receives (1) this Stipulation signed by all parties to said document; (2) the Reversionary Trust signed by all parties to said document; (3) a court Order approving the settlement on behalf of Connor Renee Carman, any legally incapacitated or minor sibling of Connor Renee Carman (whether the relationship is by blood, adoption, or otherwise), and any legally incapacitated plaintiff; (4) the Social Security numbers or tax identification numbers of plaintiffs and their attorneys, and the social security card and birth certificate of Connor Renee Carman; and (5) an authorization by the Attorney General or his designee to conclude negotiations and to consummate the settlement, counsel for the United States will send a formal request to the United States Department of the Treasury requesting that the sum of Three Million Dollars ($3,000,000.00) (hereinafter "Settlement Amount") be expeditiously sent by electronic funds transfer ("EFT") to Mesirow Financial Structured Settlements' settlement account. Mesirow Financial Structured Settlements agrees to distribute the Settlement Amount, as provided below in Paragraphs 3.a., within five business days after Mesirow Financial Structured Settlements receives a notice from its bank that the Settlement Amount has been received into said company's settlement account and has received legible copies of the birth certificate and social security card of Connor Renee Carman.

 i. On behalf of plaintiffs, a check in the cash sum of Two Million Five Hundred Thousand

Dollars ($2,500,00.00) (hereinafter "Upfront Cash") made payable to Charlotte Carman and Kristopher Carman, Individually and as Guardians of Connor Renee Carman, and their attorney, Michael Archuleta, to be mailed to the United States Attorney for the Southern District of Texas to forward to plaintiffs' counsel upon plaintiffs filing the motion to dismiss this action with prejudice, as provided in Paragraph 6, below.  With respect to the payment of the Upfront Cash, the plaintiffs stipulate and agree that:

(a) The United States will not sign any annuity application form or uniform qualified settlement form or any equivalent form; nor will the United States pay the Upfront Cash into a qualified settlement fund or its equivalent.  Plaintiffs further stipulate and agree that they, their attorneys, Guardian Ad Litem, and their representatives (including any structured settlement annuity broker, regardless of whether said broker was retained by them or by someone else, either before, during, or after the settlement) will not attempt to structure the Upfront Cash in any way, form, or manner, including by placing any of the Upfront Cash into any qualified settlement fund or its equivalent.  However, nothing in this Paragraph 3.a.i.(a) precludes the plaintiffs from purchasing standard, non-structured settlement annuities after the plaintiffs have cashed their Upfront Cash settlement check, but they agree that they will not represent to any person, entity, or agency that they are purchasing structured settlement annuities and they agree they will not attempt to purchase such structured settlement annuities.

(b) The plaintiffs will endorse the Upfront Cash check over to their attorneys to be deposited in the attorneys' client trust account to facilitate the disbursement of any amounts authorized by the approving court.

ii. For the funding of the Reversionary Trust described below in Paragraph 3.c, the sum of

Five Hundred Thousand Dollars ($500,000.00) (hereinafter "Trust Funding Amount") to be distributed by Mesirow Financial Structured Settlements, as follows:

(a)  To an annuity company, rated at least A+ by A.M. Best rating service, the sum of Four Hundred Thousand Dollars ($400,000.00) to purchase the installment refund annuity contract described in Paragraph 3.b., below; and

(b)  To the Reversionary Trust, the sum of One Hundred Thousand Dollars ($ 100,000.00).

iii.  The parties agree that any attorneys' fees owed by the plaintiffs in their Federal Tort Claims Act suit against the United States shall not exceed 25% of the Settlement Amount.  28 U.S.C. § 2678.  The parties further agree that any such attorneys' fees, along with any costs and expenses of said action against the United States and any costs, expenses, or fees associated with obtaining any court approval of this settlement on behalf of Connor Renee Carman and his siblings, shall be paid out of the Upfront Cash amount paid pursuant to Paragraph 3.a.i., above, and not in addition thereto. The parties agree that any fees for legal services incurred in this action, and in any court proceedings reviewing the settlement for approval purposes, shall be considered attorneys' fees and not costs, shall be subject to the provisions of 28 U.S.C. § 2678, and shall be paid out of the Upfront Cash amount paid pursuant to Paragraph 3.a.i., above, and not in addition thereto.

iv.  The plaintiffs stipulate and agree that they are legally responsible for any and all past, present, and future liens or claims for payment or reimbursement, including any past, present, and future liens or claims for payment or reimbursement by private insurance companies, Medicaid, or Medicare, arising from the injuries that are the subject matter of this action.  The plaintiffs stipulate and agree that they will satisfy or resolve any and all past, present, and future liens or claims for payment or reimbursement asserted by any individual or entity, including private insurance

companies, Medicaid, and Medicare. The plaintiffs, their attorneys, and the Guardian Ad Litem

represent that, as of the date they sign this Stipulation, they have made a diligent search and effort

to determine the identity of any individual or entity that has or may have a lien or claim for payment

or reimbursement arising from the injuries that are the subject matter of this action.  The plaintiffs

and their attorneys agree that, no later than thirty (30) days from the date any past, present, or future

lien or claim for payment or reimbursement is paid or resolved by the plaintiffs, they will provide to

the United States evidence that said lien or claim has been satisfied or resolved and that said

lienholder or claimant has waived and released such lien or claim.  The evidence required by the

terms of this Paragraph may be satisfied by a letter from plaintiffs' attorneys representing to counsel

for the United States that such lien or claim has been satisfied or resolved and that the lienholder or

claimant has waived and released such lien and claim.

     b. The United States will purchase an installment refund annuity contract under the following

terms and conditions:

     i.  The installment refund annuity contract will make the following periodic payments to the

Reversionary Trust described below in Paragraph 3.c.:

> The sum of $2,687.79 per month for the life of Connor Renee Carman (DOB June
> 12, 2004) and the period of the installment refund, beginning one month after the date
> the installment refund contract is purchased. The lifetime annuity payments set forth
> above have been determined based upon information supplied to the United States as
> to the birth date of Connor Renee Carman. Should the actual birth date of Connor
> Renee Carman differ from that noted above, then the amount of the lifetime annuity
> payments shall be adjusted so the benefits of the contract are what the premiums paid
> for the lifetime annuity payments would have purchased on the date of the annuity's
> purchase.  In the event the cost of the annuity contract has either increased or
> decreased by the date of purchase, the monthly annuity payments set forth above shall
> be adjusted downward or upward to ensure that the premium cost of the annuity
> contract is equal to $400,000.00 and not more or less than that amount. In the event
> of the death of Connor Renee Carman, during any period of installment refunds

specified in this Paragraph 3.b., all remaining installment refund payments shall be made payable to the United States Treasury and sent to the Torts Branch, Civil Division, United States Department of Justice, P.O. Box 888, Benjamin Franklin Station, Washington, D.C. 20044, or, upon written notice, any subsequent change of address.

ii.  The annuity contract being purchased pursuant to this Paragraph 3.b. will be owned solely and exclusively by the United States and will be purchased through Mesirow Financial Structured Settlements as specified above in Paragraph 3.a.  The parties stipulate and agree that the United States' only obligation with respect to said annuity contract and any annuity payments therefrom is to purchase the annuity contract, and they further agree that the United States does not guarantee or insure any of the annuity payments.  The parties further stipulate and agree that the United States is released from any and all obligations with respect to the annuity contract and annuity payments upon the purchase of the annuity contract.

iii.  The parties stipulate and agree that the annuity company that issues the annuity contract shall at all times have the sole obligation for making all annuity payments.  The obligation of the annuity company to make each annuity payment shall be discharged upon the mailing of a valid check, a direct deposit, or an electronic deposit, in the amount of such payment to the address or account designated by the party to whom the payment is required to be made under this Stipulation. Payments lost or delayed through no fault of the annuity company shall be promptly replaced by the annuity company issuing the payment.

iv.  The parties stipulate and agree that the annuity payments cannot be assigned, accelerated, deferred, increased, or decreased by the parties, that no part of any annuity payments called for herein or any assets of the United States are subject to execution or any legal process for any obligation in any manner, and that the plaintiffs shall not have the power or right to sell, assign, mortgage,

encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise.

v.  Plaintiffs and their guardians, heirs, executors, administrators, or assigns do hereby agree to maintain with the annuity company and the United States a current mailing address, and to notify the annuity company and the United States of the death of Connor Renee Carman, within five (5) days of death.

c.  The United States will establish, as the grantor, the Reversionary Trust on the following terms and conditions:

i.  The parties agree to the terms, conditions, and requirements of the Reversionary Trust, a copy of which is attached hereto and incorporated by reference.

ii.  The parties agree that the plaintiffs and their successors, assigns, or guardians shall provide to the administrator and trustee of said trust any information, documentation, authorizations, or signatures required by the terms of the trust or by the administrator or trustee in administering the terms of the trust.  The parties agree that the failure to provide such information, documentation, authorizations, or signatures may result in the denial, in whole or part, of payments from the trust estate, depending on the terms of the trust.

iii.  The parties agree that plaintiffs and their heirs, executors, administrators, or assigns shall maintain with the trustee, the administrator, and the United States a current mailing address, and shall notify the trustee, the administrator, and the United States of any event upon which the right of payments from the trust estate may depend, including the death of Connor Renee Carman, within five (5) days of the date of such event.

iv.  The parties agree that upon the death of Connor Renee Carman, the trustee shall, to the extent authorized by the terms of said trust, pay allowable charges, expenses, and benefits, and

liquidate and distribute the remaining trust estate to the United States by check made payable to the United States Treasury and sent to the Torts Branch, Civil Division, United States Department of Justice, P.O. Box 888, Benjamin Franklin Station, Washington, D.C. 20044, or, upon written notice, any subsequent change of address.

4. Plaintiffs, the siblings of Connor Renee Carman, and the guardians, heirs, executors, administrators, and assigns of the Plaintiffs and the siblings of Connor Renee Carman, do hereby accept the sums set forth above in Paragraph 3.a., the purchase of the annuity contract set forth above in Paragraph 3.b., and the establishment of the Reversionary Trust set forth above in Paragraph 3.c. in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, including any future claims for wrongful death and any claims for fees, interest, costs, and expenses, arising from, and by reason of, any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, death, or damage to property, and the consequences thereof, which the plaintiffs or their heirs, executors, administrators, or assigns may have or hereafter acquire against the United States, its agents, servants, and employees on account of the same subject matter that gave rise to the above-captioned action. Plaintiffs, the siblings of Connor Renee Carman, and the guardians, heirs, executors, administrators, and assigns of the Plaintiffs and the siblings of Connor Renee Carman do hereby further agree to reimburse, indemnify, and hold harmless the United States and its agents, servants, and employees from and against any and all such claims, causes of action, liens, rights, or subrogated or contribution interests (whether such claims, causes of action, liens, right, subrogated interests, or contribution interests sound in tort, contract, or statutory) incident to, or resulting or arising from, the acts or omissions that gave rise to the above-captioned action, including claims or causes of action for wrongful death.

5.  This compromise settlement is specifically subject to each of the following conditions:

a.  The Attorney General or the Attorney General's designee must approve the terms of the settlement and authorize the attorney representing the United States to negotiate and consummate a settlement for the amount and upon the terms and conditions agreed upon by the parties, as set forth in this Stipulation.

b.  The parties must agree in writing to the terms, conditions, and requirements of this Stipulation and the Reversionary Trust. The parties stipulate and agree that the Stipulation and the compromise settlement are null and void in the event the parties cannot agree on the terms, conditions, and requirements of this Stipulation or the Reversionary Trust. The terms, conditions, and requirements of this Stipulation are not severable and the failure to agree, fulfill, or comply with any term, condition, or requirement renders the entire Stipulation and the compromise settlement null and void. The parties must agree to the terms, conditions, and requirements of the Stipulation and the Reversionary Trust before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee.

c.  Connor Renee Carman, must be alive at the time the annuity contract being purchased pursuant to Paragraph 3.b., above, is purchased and at the time the Reversionary Trust being established pursuant to Paragraph 3.c., above, is "deemed established," as that phrase is defined in Article V of the Reversionary Trust. In the event of the death of Connor Renee Carman, prior to the date the annuity contract is purchased or the Reversionary Trust is deemed established, the entire Stipulation and the compromise settlement are null and void.

d.  Plaintiffs must provide the United States with a complete set of the extant medical records of Connor Renee Carman, (including any independent medical examinations conducted for purposes

of this litigation, any and all clinic visits, whether for routine checkups or for treatment and care for any medical condition, injury, disease, etc., any and all hospital and emergency room records, and any records of any diagnostic testing) for the past 36 months for inspection and review by the United States or any medical consultant retained by the United States. In the event said complete set of such medical records does not contain reports of a complete medical examination, including routine cancer, cardiovascular, and pulmonary screens, plaintiffs must have a complete, comprehensive examination (including routine cancer, pulmonary, and cardiovascular screens, and any examinations necessary to screen for cancer, cardiovascular disease, pulmonary disease, renal disease, or other life-threatening diseases or illnesses) conducted at their expense and a copy of all such examinations and reports resulting therefrom must be provided to the United States. In the event said records and reports reveal that Connor Renee Carman had or has any such potentially life-threatening or life-shortening diseases or illnesses not caused by the medical care at issue in this action, the United States reserves the right to elect not to consummate the settlement and upon such election by the United States the entire settlement is null and void. The plaintiffs must provide all extant medical records for the past 36 months before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee.

e. Plaintiffs must obtain at their expense an Order by a court of competent jurisdiction approving the terms of the settlement on behalf of Connor Renee Carman, the minor siblings (whether by blood, adoption, or otherwise) of Connor Renee Carman, and any other required to sign this Stipulation who is legally incapacitated or a minor. The terms of any such Order must be approved by the Department of Justice's Torts Branch (FTCA Staff) prior to being submitted to any reviewing Court and said Order signed by such Court cannot be changed by the Court or parties

without the prior written consent of the Torts Branch (FTCA Staff). In the event any such minor or legally incapacitated person is not a party to this action, plaintiffs must obtain, at their expense, said court approval on behalf of any such minor or legally incapacitated adult from a court of competent jurisdiction. Plaintiffs agree to obtain any such court Order in a timely manner; time being of the essence. Plaintiffs further agree that the United States may void this settlement at its option in the event any such court Order is not obtained with respect to each person being required to sign this Stipulation in a timely manner. In the event plaintiffs fail to obtain any such court Order or any such Order they obtain fails to comply with the terms and conditions of this Paragraph 5.e, the entire Stipulation and the compromise settlement are null and void. The plaintiffs must obtain any such court Order before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee. Plaintiffs represent that the only siblings of Connor Renee Carman, whether by blood, adoption, or otherwise, are Bethany Dawn Carman, David Allen Carman, Alexander Kristopher Carman and Eli Andrew Carman. Plaintiff agrees to obtain a court order approving settlement on their behalf from a Court of competent jurisdiction

      f. In the event there are any currently known liens or claims for payment or reimbursement, including any liens or claims by Medicaid or Medicare but not including any claim Tricare may have against the plaintiffs, arising out of the subject matter that gave rise to the above-captioned action, whether disputed as legally valid or not, plaintiff must obtain a release and waiver from any State, private entity, or private individual who claims to have such lien or claim. For purposes of this Stipulation, such lien or claim includes but is not limited to, a claim or cause of action for reimbursement for any payments made to or on behalf of the plaintiff or a claim or cause of action for reimbursement for any goods or services provided or furnished to or on behalf of the plaintiff.

The United States will provide the form of Release and Waiver to be used by the plaintiffs.  Prior to the United States Attorney's Office seeking approval from the Attorney General or his designee, the plaintiffs must provide the United States with either (i) all such releases and waivers required by this Paragraph 5.g., or (ii) a written representation by plaintiffs' counsel stating, after a diligent search of counsel' law firms' records and files and of the plaintiffs' personal records and files, that no such liens or claims are currently known to exist.

6.  Subject to the terms and conditions set forth in Paragraph 3.a., above, plaintiffs' attorneys agree to distribute the Upfront Cash paid pursuant to Paragraph 3.a.i., above, to the plaintiffs after paying or resolving any lien or claim for reimbursement or payment for which plaintiffs have agreed to be legally responsible under the terms of this Stipulation.  Plaintiffs' attorneys further agree that, within five (5) business days after the plaintiffs receive the settlement check as provided in Paragraph 3.a.i. of the Stipulation, they will file with the United States District Court for the Southern District of Texas a dismissal of this action in its entirety, with prejudice and with each party bearing its own costs, expenses, and fees.

7.  The parties agree that this Stipulation, including all the terms and conditions of this compromise settlement and any additional agreements relating thereto, may be made public in their entirety, and the plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

8.  It is contemplated that this Stipulation may be executed in several counterparts, with a separate signature page for each party.  All such counterparts and signature pages, together, shall be deemed to be one document.

Executed this 18th day of *August*, 2008.

**DONALD J. DeGABRIELLE, JR.**
United States Attorney
Attorneys for Defendant,
United States of America

BY: _____

**FRED T. HINRICHS**
Assistant United States Attorney
Texas Bar No.10131415
Federal ID No.: 7959
919 Milam, Suite 1500
PO Box 61129
Houston, Texas 77208
(713) 567-9529
(713) 718-3303 Fax

Executed this 8th day of July , 2008.

**ARCHULETA, ALSAFFAR & HIGGINBOTHAM**
P.O. Box 340639
Austin, Texas 78734
(512) 266-7676
(512) 266-4646 Fax

**Michael Archuleta**
State Bar No. 00783555
**Laurie M. Higginbotham**
State Bar No. 50511759
Attorneys for plaintiffs

Executed this _____ day of _____, 2008
CONNOR RENEE CARMAN, PLAINTIFF

By: _Charlotte Carman_____ 14 July 2008
      Charlotte Carman, as Guardian of
      Connor Renee Carman, a minor


By: _____ 14 July 2008
      Kristopher Carman, as Guardian of
      Connor Renee Carman, a minor

By: _____ 22 July 2008
      Guardian Ad Litem
      for Connor Renee Carman, a minor

Executed this _14_ day of _July_, 2008.
KRISTOPHER CARMAN, PLAINTIFF

KRISTOPHER CARMAN, Plaintiff

Carman v. United States.
Stipulation For Compromise Settlement And Release

**Page 16 of  22**

Executed this __14__ day of __July__, 2008.
CHARLOTTE CARMAN, PLAINTIFF

_Charloch Carman_
CHARLOTTE CARMAN, Plaintiff

Executed this _21t_ day of _July_____, 2008.
BETHANY DAWN CARMAN, A MINOR

By: _Charlotte (Carman)_____ 14 July 2008
    Charlotte Carman, as Guardian of
    Bethany Dawn Carman, a minor

By: _____ 14 July 2008
    Kristopher Carman, as Guardian of
    Bethany Dawn Carman, a minor

By: _____
    Guardian Ad Litem
    for Bethany Dawn Carman, a minor

Executed this 21st day of July , 2008.
DAVID ALLEN CARMAN, A MINOR

By: *Charlotte Carman*          14 July 2008
    Charlotte Carman, as Guardian of
    David Allen Carman, a minor

By: _____          14 July 2008
    Kristopher Carman, as Guardian of
    David Allen Carman, a minor

By: _____
    Guardian Ad Litem
    for David Allen Carman, a minor

Carman v. United States.
Stipulation For Compromise Settlement And Release

Page 19 of 22

Executed this ___ day of _____, 2008.
ALEXANDER KRISTOPHER CARMAN, A MINOR

By: *Charlotte Carman*    14 July 2008
     Charlotte Carman, as Guardian of
     Alexander Kristopher Carman, a minor

By: _____    14 July 2008
     Kristopher Carman, as Guardian of
     Alexander Kristopher Carman, a minor

By: _____
     Guardian Ad Litem
     for Alexander Kristopher Carman, a minor

Executed this _2H_ day of _____, 2008.
ELI ANDREW CARMAN, A MINOR

By: _Charlotte Carman_          14 July 2008
    Charlotte Carman, as Guardian of
    Eli Andrew Carman, a minor

By: _____          14 July 2008
    Kristopher Carman, as Guardian of
    Eli Andrew Carman, a minor

By: _____
    Guardian Ad Litem
    for Eli Andrew Carman, a minor

Executed this 2 day of _____, 2008.
MESIROW FINANCIAL STRUCTURED SETTLEMENTS

Thomas D. Walsh, Senior Vice President
for Mesirow Financial Structured Settlements